[599 NYS2d 1]

EAST 32ND STREET ASSOCIATES et al., Respondents, v JONES LANG WOOTTON USA et al., Appellants.

First Department, May 18, 1993

### APPEARANCES OF COUNSEL

*Wayne C. Matus* of counsel *(Christy & Viener,* attorneys), for appellants.

*Craig P. Murphy* of counsel *(Marian E. Baldwin* with him on the brief; *Windels, Marx, Davies & Ives,* attorneys), for respondents.

### OPINION OF THE COURT

ELLERIN, J.

The underlying action involved on this appeal stems from a

financially unsuccessful real estate venture undertaken by plaintiffs with the aid of their then investment advisor, property manager and leasing agent, defendant Jones Lang Wootton USA (JLW), and its employees, defendants Milde and Pariser. The property at issue, a commercial office building located at 145 East 32nd Street in Manhattan, was purchased by plaintiff East 32nd Street Associates in October 1985. Plaintiffs' claim that they were induced to enter into this transaction by false information deliberately provided to them by defendants Milde and Pariser. Specifically, plaintiffs allege that defendants, with the intent to deceive and to induce plaintiffs to purchase the property, on or about April 25, 1985, transmitted to them, by mail, the "April Report," which defendants knew contained material misrepresentations concerning the investment potential of the property, including projected cash flow and projected figures for the net rentable area. Additionally, plaintiffs allege that, on or about May 15, 1985, defendants transmitted to them, by mail, the "May Budget," which defendants knew contained material misrepresentations concerning the projected construction budget for the renovation of the property. Plaintiffs further allege that, on August 14, 1985, with the intent to deceive, Milde sent them a letter in which he falsely stated that the purchase "provide[d] an excellent opportunity to achieve [plaintiff Webbjohn Street Corporation's investment] objective." Plaintiffs also allege that defendants transmitted numerous unspecified telexes falsely confirming that the representations and projections in the April Report and the May Budget were accurate.

In alleging Milde and Pariser's purpose in making such false representations, plaintiffs claim that Milde and Pariser intended that, following the purchase of the property by plaintiffs, defendants, on behalf of themselves as well as other JLW partners and/or employees, would arrange for JLW to forego the brokerage and other fees owed by plaintiffs to JLW and, in exchange, defendants Milde and Pariser and the other participants in the scheme would receive an ownership share in the property and the allocation to them of virtually all of the initial tax benefits. Plaintiffs allege that, although this secondary deal was never actually consummated, it was the desire to have the opportunity to negotiate it which motivated Milde and Pariser to provide false information to encourage plaintiffs to make the purchase in the first instance.

As to defendant Milde, plaintiffs have also made allegations

involving a completely separate purchase of real property by an unrelated client of JLW, European Property Corporation Ltd. (EPC) involving unspecified letters, telexes and telephone conversations in which Milde allegedly intentionally assured EPC that the information contained in an "Acquisition Report" which had been provided to EPC was true while knowing that it was false. According to plaintiffs' bill of particulars in the within action, these misrepresentations were made to EPC by Milde on behalf of JLW in order to benefit another client.

Based on these allegations, plaintiffs commenced the instant action alleging six causes of action, i.e., fraud against all defendants, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) against defendants Milde and Pariser, negligent misrepresentation against all defendants, breach of contract against defendant JLW, and breach of fiduciary duty against all defendants. Defendants brought the motion which is the subject of this appeal seeking to dismiss the complaint for failure to state a cause of action and, in the alternative, seeking summary judgment. The IAS Court denied defendants' motion in its entirety. It may be noted that discovery, which had not yet been completed, has, pursuant to court order, proceeded during the pendency of this appeal.

█ At the outset, we find that the IAS Court properly denied the motion to dismiss the first cause of action for intentional misrepresentation. While the law is well established that a cause of action for fraud cannot be based on speculative statements or expressions of hope concerning a future event *(see, Crossland Sav. v SOI Dev. Corp.,* 166 AD2d 495; *Derwald v L.J.N. Toys,* 161 AD2d 223, 224), financial projections made with the knowledge that they were false and unreasonable may be the basis for an allegation of common-law fraud *(CPC Intl. v McKesson Corp.,* 70 NY2d 268, 286). Plaintiffs here have alleged various misrepresentations by defendants which were designed to induce them to purchase the property and have presented sufficient evidence to present a question of fact as to whether those misrepresentations were made knowingly. Moreover, the fourth and sixth causes of action against defendant JLW were properly sustained as stating causes of action for breach of contract.

We find, however, that the third cause of action, which attempts to state a cause of action for negligent misrepresentation, fails to allege the violation of a legal duty independent of the contract and should therefore be dismissed *(Clark-*

*Fitzpatrick, Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 389). Furthermore, we find that the fifth cause of action, against all three defendants for breach of fiduciary duty, should also be dismissed. Contrary to plaintiffs' argument on appeal, no facts have been alleged indicating that the parties ever actually entered into a partnership relationship.

We turn, finally, to consideration of the second cause of action against defendants Milde and Pariser for treble damages based on violation of the Racketeer Influenced and Corrupt Organizations Act (18 USC § 1962).

■ The RICO Act provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or an unlawful debt." (18 USC § 1962 [c].) In order to establish such a "pattern of racketeering activity," it must be shown that defendants committed at least two predicate racketeering acts within a 10-year period (18 USC § 1961 [5]). Such acts are defined in 18 USC § 1961 (1).

The racketeering acts alleged by plaintiffs as having been committed by the within defendants consist of several instances of wire fraud (18 USC § 1343) and mail fraud (18 USC § 1341), both of which qualify as racketeering acts within the meaning of the RICO Act. Specifically, plaintiffs allege that defendants, with the intent to deceive and to induce plaintiffs to purchase the property, on or about April 25, 1985, transmitted to them, by mail, the April Report, which they knew contained material misrepresentations and, on or about May 15, 1985, transmitted to them, by mail, the May Budget, which they knew contained material misrepresentations and that, on August 14, 1985, with the intent to deceive, Milde sent a letter in which he stated that the purchase "provide[d] an excellent opportunity to achieve [plaintiff Webbjohn Street Corporation's investment] objective." It is also alleged that defendants transmitted numerous unspecified telexes confirming that the representations in the April Report and the May Budget were accurate and that the rental calculations were realistic.

While there is no question that these allegations set forth at least two racketeering acts, as defined by the statute, more is required before a RICO cause of action is properly stated. The United States Supreme Court has held that, by its use of the

word " 'pattern'," the statute requires not merely a multiplicity of predicates, but that those predicates are ordered by means of "the relationship they bear to each other or to some external organizing principle" *(H.J. Inc. v Northwestern Bell Tel. Co.,* 492 US 229, 238) and that "they amount to or pose a threat of continued criminal activity" *(supra,* at 239).

To establish the requisite relationship, it is necessary that the predicate acts alleged " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *(Supra,* at 240, quoting 18 USC § 3575 [e] [now repealed].) Clearly, the acts described in the complaint, which are alleged to have been part of the same fraudulent scheme, involving the same participants, may be said to be so related to each other as to be considered part of a single pattern of racketeering activity.

The dispositive issue, therefore, is whether these acts demonstrate sufficient continuity to comprise "a pattern of racketeering activity". Continuity may be demonstrated in various ways, including a showing that the predicate acts, in and of themselves, extended over a sufficiently substantial period of time. This type of "closed ended" continuity is clearly inapplicable in this case. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the] requirement" of continuity *(supra,* at 242). In and of themselves, these acts are of too short a duration, i.e., 5½ months, to establish a pattern *(see, e.g., Hughes v Consol-Pa. Coal Co.,* 945 F2d 594, 611; *Kehr Packages v Fidelcor, Inc.,* 926 F2d 1406, 1418, *cert denied* — US —, 111 S Ct 2839).

Continuity may also be demonstrated by showing that the predicate acts "establish a threat of continued racketeering activity" *(H.J. Inc. v Northwestern Bell Tel. Co., supra,* at 242). Such "open-ended continuity" may be demonstrated, for example, by a showing that the predicates themselves contained a specific threat of repetition, such as a showing that they were part of a series of regularly scheduled extortionate demands *(H.J. Inc. v Northwestern Bell Tel. Co., supra,* at 242-243; *see also, United States v Kaplan,* 886 F2d 536, 542-543, *cert denied* 493 US 1076). The facts here alleged make no such showing. Since the specified racketeering acts were alleged to be committed with the purpose of encouraging the purchase of the property, any specific threat of future acts clearly evaporated when the property was purchased. We note in this context that plaintiffs' vague intimation that these acts were the first

step in an undefined tax evasion scheme is patently insufficient to establish a sufficient threat of future criminal activity to establish a pattern of racketeering. In the absence of such pattern, the second cause of action must be dismissed against defendant Pariser.

As to defendant Milde, plaintiffs have additionally alleged racketeering acts which involve a completely separate purchase of real property by an unrelated client of JLW, European Property Corporation Ltd. Plaintiffs' purpose in these additional allegations is to show that the requisite continuity has been established by demonstrating that the acts involved in the case at bar constitute defendant's regular way of doing business. This would, if established by the facts, be an appropriate method of demonstrating open-ended continuity *(H.J. Inc. v Northwestern Bell Tel. Co., supra,* at 242-243). The additional racketeering acts here alleged include incidents of mail and wire fraud involving unspecified letters, telexes and telephone conversations in which it is charged that Milde intentionally assured EPC that the information contained in an "Acquisition Report" which had been provided to EPC was true while knowing that it was false. According to plaintiffs' bill of particulars, these misrepresentations were made to EPC by Milde on behalf of JLW in order to benefit another client.

Assuming the truth of these additional allegations, as we must, we find that they are not sufficiently similar to the acts alleged with respect to these plaintiffs to establish a pattern of racketeering activity as to Milde. The only similarity between the two alleged schemes is that they involved the use of falsehoods, transmitted by mail or wire, in two real estate purchase recommendations made by Milde during the course of his career as a real estate investment advisor. Not only are the alleged victims completely unrelated, but the stated intended purposes of the two alleged schemes were significantly different. The EPC scheme was alleged to have been perpetrated for the purpose of benefitting a third-party client of JLW, while the alleged scheme involving plaintiffs was designed to create an opportunity to benefit individual employees of JLW by channeling ownership and tax benefits to them individually. Clearly, mere allegations of mail and wire fraud, in and of themselves, are insufficient to provide the necessary link between schemes *(Hartz v Friedman,* 919 F2d 469, 473). Here, there is clearly a failure to demonstrate that the additional acts are related to the conduct of which plaintiffs complain.

Moreover, this dissimilarity between the incidents further militates against the implication that the alleged acts upon which plaintiffs' claims are predicated constitute a regular way of doing business by defendant Milde, which plaintiffs rely on to establish the requisite continuity. These two isolated events simply fail to demonstrate systematic use of racketeering activities in the conduct of the enterprise *(Vild v Visconsi,* 956 F2d 560, 569-570; *Beber v Kanarick,* 1992 US Dist LEXIS 3443 [SD NY, Mar. 23, 1992, Freeh, J.]; *Hartz v Friedman, supra,* at 474). " '[I]f the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim' " *(Beber v Kanarick, supra,* at *5, quoting *Menasco, Inc. v Wasserman,* 886 F2d 681, 685).

Thus, in light of the failure to allege facts sufficient to establish the existence of a pattern of racketeering activity, plaintiffs' second cause of action must also be dismissed as against defendant Milde.

Accordingly, the order of the Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered January 9, 1992, which denied defendants' motion to dismiss the complaint for failure to state a cause of action or, in the alternative, for summary judgment, should be unanimously modified, on the law, to dismiss the second, third, and fifth causes of action, and should be otherwise affirmed, without costs.

Motion by defendants-appellants to strike plaintiffs-respondents' amended brief, is denied.

MILONAS, J. P., ROSS and ASCH, JJ., concur.

Order of the Supreme Court, New York County, entered January 9, 1992, which denied defendants' motion to dismiss the complaint for failure to state a cause of action or, in the alternative, for summary judgment, unanimously modified, on the law, to dismiss the second, third, and fifth causes of action, and is otherwise affirmed, without costs. Motion by defendants-appellants to strike plaintiffs-respondents' amended brief, is denied.